UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CONSTANCE FULLWOOD,

     *Plaintiff*,

 v.

SDH SERVICES WEST, LLC, and SODEXO, INC.,

     *Defendants*.

Civil No.:  16-cv-06527-FPG-JWF

# DEFENDANTS' LOCAL RULE 56
# STATEMENT OF MATERIAL FACTS

**HARRIS BEACH PLLC**

Daniel J. Moore
*Attorneys for Defendants*
99 Garnsey Road
Pittsford, NY  14534
Telephone: (585) 419-8626
Facsimile: (585) 419-8817
dmoore@harrisbeach.com

HARRIS BEACH
ATTORNEYS AT LAW

Defendants, SDH Services West, LLC and Sodexo, Inc. (hereinafter collectively "Sodexo" or "Defendants"), pursuant to Rule 56 of the Local Rules of Civil Procedure for United States District Court for the Western District of New York, submit that there are no issues with respect to the following material facts. References are made to: (1) the Plaintiff's Complaint; (2) the depositions of Plaintiff and Sodexo Human Resources Director Brett Chittenden; (3) the Affidavit of Brett Chittenden, submitted herewith in support of Defendants' Motion for Summary Judgment; and (4) the Exhibits annexed hereto.

## PARTIES AND AFFIANT

1. SDH Services West, LLC is a wholly-owned subsidiary of Sodexo, Inc. (**Exhibit 1**, Affidavit of Brett Chittenden, sworn to September 27, 2017, at ¶2). Sodexo, Inc. offers outsourcing solutions including food services and custodial management services to corporations, health care and long term care facilities, retirement centers, schools, colleges, and universities. (**Ex. 1**, ¶2).

2. Sodexo provides custodial management services for the University at Buffalo (the "University") pursuant to a contract entered into in August of 2006. (**Exhibit 2**, Contract #C-001044).

3. Plaintiff, Constance Fullwood, is an African-American female and a former employee of Sodexo. (A copy of Plaintiff's Complaint is attached as **Exhibit 3**). (**Ex. 3**, ¶¶8, 15). Ms. Fullwood worked as a Custodial Manager at Sodexo's University at Buffalo custodial management services account for approximately six months, from February 2, 2015 to August 14, 2015. (Relevant portions of Plaintiff's deposition testimony are annexed hereto as **Exhibit 4**). (**Ex. 4**, pp. 52, 61; **Exhibit 5**, Offer Letter dated Jan. 9, 2015; **Exhibit 6**, Resignation Email dated Aug. 13, 2015).

4. Affiant Brett Chittenden is currently employed by Sodexo as Director II of Employee Relations Services. (**Ex. 1**, ¶1). During the time period relevant to this lawsuit, Mr. Chittenden held the position of Director of Human Resources. (**Ex. 1**, ¶1).

### SODEXO AND ITS POLICIES

5. Ms. Fullwood began working for Sodexo in February 2015 as a Custodial Manager at Sodexo's custodial management services account with the University. (**Ex. 4**, p. 61, **Ex. 5**).

6. As a Custodial Manager, Ms. Fullwood was responsible for supervising a team of the University's custodial service employees. (**Ex. 4**, pp. 74-75).

7. Ms. Fullwood reported to Christopher Baugh. (**Ex. 1**, ¶4). Mr. Baugh is employed by Sodexo as an Operations Manager assigned to Sodexo's custodial management services account with the University. (**Ex. 1**, ¶4). Mr. Baugh reports to Michael Walker, who is employed by Sodexo as the General Manager of the custodial management services account. (**Ex. 1**, ¶4).

8. Sodexo maintains an Employee Handbook and a Company Policy Manual which are uniformly applicable to all employees. (**Exhibit 7**, relevant portions from Employee Handbook; **Exhibit 8**, relevant policy from Company Policy Manual).

9. The Employee Handbook contains Sodexo policies on, among other things, equal employment opportunity and non-harassment. (**Ex. 7**).

10. The Equal Employment Opportunity and Policy Against Harassment provides that Sodexo is committed to providing and maintaining a workplace free of discrimination and harassment of any kind. (**Ex. 7**, pp. 2-6). Any employee who engages in harassment or discrimination will be subject to discipline, up to and including termination of employment. (**Ex. 7**, pp. 3, 5).

11. The policy furthermore sets forth a reporting structure for employees wishing to report harassment or discrimination: employees are instructed to report it to their manager, their

manager's manager, the next higher level of management, or a Sodexo Human Resources representative. (**Ex. 7**, pp. 3, 6, 9-10). Ms. Fullwood was provided the name for each level of management who could be contacted in the event of a reporting situation, as well as with Human Resources contact information. (**Exhibit 9**, Orientation Plan, p. 7; **Ex. 1**, ¶29).

12. The Employee Handbook further provides employees with the option to report via its Business Abuse Hotline. (**Ex. 7**, p. 7).

13. Consistent with Sodexo's Employee Handbook, the Company Policy Manual includes policies on, among other things, non-harassment (Policy No. CP-201), and CP-201 establishes the same reporting structure found in the Employee Handbook. (**Ex. 8**, p. 3).

14. Sodexo takes its obligation of providing a workplace free of harassment extremely seriously. These policies and the reporting procedure are reviewed with employees during their orientation, and are reinforced by training sessions that are periodically given to supervisory personnel on harassment awareness and prevention. (**Ex. 1**, ¶8).

15. Ms. Fullwood had access to both the Employee Handbook and the Company Policy Manual during her tenure at Sodexo. (**Ex. 4**, pp. 71-73; **Ex. 9**).

16. In addition to reviewing the Employee Handbook with Sodexo General Manager Michael Walker as part of her orientation, Ms. Fullwood was granted access to Sodexo's Intranet, 'SodexoNet'. (**Ex. 4**, p. 91; **Ex. 9**, p. 3). Among other employee tools and information, SodexoNet permits managerial employees unfettered access to the Employee Handbook and Company Policy Manual. (**Ex. 1**, ¶10).

17. Ms. Fullwood also received reinforcement trainings from both the University and Sodexo. Specifically, Ms. Fullwood completed a University-administered online training course on harassment prevention on March 17, 2015, and a Sodexo-administered online training course on

harassment prevention on March 24, 2015. (**Ex. 4**, pp. 81-82; **Exhibit 10**, On-Line Unlawful Harassment Prevention Training; **Exhibit 11**, transcript report dated Feb. 1, 2016).

18. Sodexo's policy and practice is straightforward. When a complaint of discrimination or harassment is received, a member of the Human Resources Department is assigned to promptly investigate the complaint. (**Ex. 1**, ¶12). Where either an employee of a Sodexo client makes a complaint against a Sodexo employee, or a Sodexo employee has complained about an employee of a Sodexo client, the Human Resources Department may conduct the investigation in conjunction with the appropriate representative of the Sodexo client. (**Ex. 1**, ¶12).

19. It is Sodexo policy to take steps to make sure an employee who claims to have been harassed, discriminated against or retaliated against does not work with the accused until the matter is resolved. (**Exhibit 12**, Harassment, Discrimination and Retaliation For Managers, p. 3). This often involves placing the accused on paid or unpaid investigatory leave while the facts are investigated. (**Ex. 12**, p. 3; **Ex. 1**, ¶13).

20. If an investigation concludes that the policy has been violated, appropriate discipline up to and including termination is imposed. (**Ex. 1**, ¶14).

**COMPLAINTS MADE BY UNIVERSITY EMPLOYEES *AGAINST* FULLWOOD**

21. Throughout Ms. Fullwood's brief employment, Sodexo received several complaints from the University regarding Ms. Fullwood's performance. (See **Exhibit 13**, Call Notes).

22. More concerning, it also received complaints that Ms. Fullwood had harassed University employees and otherwise engaged in inappropriate and unprofessional behavior. On June 8, 2015, the University at Buffalo's Office of Equity, Diversity and Inclusion ("Office of EDI") contacted Sodexo and reported that one of its custodial service employees complained that Ms. Fullwood had made inappropriate, demeaning, racial, derogatory, and threatening comments to

the University employees she supervised. (**Exhibit 14**, Human Resources Investigation Report, p. 28).

23. Consistent with Sodexo policy and practice, Ms. Fullwood was placed on paid investigatory leave pending the outcome of an internal investigation into the employee's complaints. (**Ex. 1**, ¶19; **Exhibit 15**, Employee Investigatory Leave Notice).

24. Mr. Chittenden led the investigation for the Company, in partnership with the University's Office of EDI. (**Ex. 1**, ¶¶15, 18, 20; **Ex. 14**).

25. The investigation was thorough and detailed. It included interviews with six University employees, as well as with Ms. Fullwood. (**Ex. 14**, p. 4; **Exhibit 16**, Confidential Investigative Summary, p. 2). Both Sodexo and University representatives were present (either by telephone or in person) for each of the interviews. (**Exhs. 14, 16**).

26. The University concluded that Ms. Fullwood's comments "violate [the University]'s Discrimination and Harassment policy and could create an unwelcome, unprofessional and hostile work environment for University employees." (**Ex. 16**, p. 8)

27. It further concluded:

> Throughout the course of the investigation, several concerns were raised about Ms. Fullwood's job knowledge, supervisory style, poor time management, and ineffective communication with her staff and other university employees. These factors, coupled with the evidence obtained as a result of the hostile work environment complaint, lead the university to recommend that Ms. Fullwood no longer be assigned to work on any of the University at Buffalo campuses.

(**Ex. 16**, p. 8).

28. For its part, then-Human Resources Director Brett Chittenden participated in the interviews with University employees and carefully reviewed all relevant evidence. (**Ex. 14**).

29. The witness interviews substantiated that:

> Ms. Fullwood engaged in a conversation with employees about the KKK and Jesse Jackson, and in that conversation used the word "nigger". . . . Ms. Fullwood engaged in name calling; including calling employees "gay", "retard", "fat", "QP", and

6

"quarter pounder", and referred to employees as "ISIS". . . . Ms. Fullwood made an inappropriate reference to male genitals, threatened to write employees up or terminate employees, used the word "bitch" in an introductory meeting, made references about being from Detroit, Michigan, and the hood, shared personal information about weight loss surgery, asked an employee to take a photo of her, requested employees hug her, and videotaped and audiotaped employees without authorization.

(**Ex. 14**, p. 5).

30. In total, the investigation revealed Ms. Fullwood had engaged in "a consistent pattern of behavior and conduct that violated Sodexo policy, did not support Sodexo values, did not meet the standards Sodexo expects from managers, and showed poor judgment as a manager." (**Ex. 14**, p. 5). Further, "Ms. Fullwood's behavior created an unfriendly environment for the employees she supervised and created an environment lacking respect and trust." (**Ex. 14**, p. 5).

31. Based on these findings of misconduct, and taking into consideration the limited length of service Ms. Fullwood had with Sodexo, Ms. Fullwood was issued a Final Written Warning. (**Exhibit 17**, Constructive Counseling Notice Without Action Plan). Ms. Fullwood was also required to review Sodexo policies and complete additional trainings on harassment and discrimination. (**Ex. 17**).

32. On July 21, 2015—before Sodexo was able to remove Ms. Fullwood from investigatory leave and return her to her duties at the University—Mary Jo Serafini of the University's Human Resources and Compliance Team contacted Sodexo and requested Ms. Fullwood be removed from Sodexo's custodial management services account with the University. (**Exhibit 18**, Serafini email dated June 21, 2015).

33. Ms. Serafini explained that this request was being made by the University based on the recommendation contained in the Office of EDI's Confidential Investigative Summary, that:

[S]everal concerns were raised about Ms. Fullwood's job knowledge, supervisory style, poor time management, and ineffective communication with her staff and other [U]niversity employees. These factors, coupled with the evidence obtained as a result of the hostile work environment complaint, lead the [U]niversity to

7

recommend that Ms. Fullwood no longer be assigned to work on any of the University at Buffalo Campuses.

(**Ex. 16**, p. 8; **Ex. 18**).

34. The University retains the right to require Sodexo to remove any supervisory personnel from assignment to the custodial management services account when, in the University's opinion, the individual is unsuitable to continue on the account. (**Ex. 1**, ¶3). Sodexo honored the University's request to remove Ms. Fullwood from the account. (**Ex. 1**, ¶26).

35. Consistent with Company policy and practice, on August 6, 2015, Ms. Fullwood was advised that she would no longer be assigned to her duties at the University, but that Sodexo would continue her salary and benefits for six (6) weeks which would allow her to apply for other equivalent positions within Sodexo. (**Ex. 1**, ¶26; **Ex. 4,** pp. 176-77).

36. To that point, and even prior to the allegations of misconduct, Ms. Fullwood had contacted Sodexo Recruiter Doreen Settles in search of different postings within the Company. (**Ex. 1**, ¶27). Sodexo typically has many available opportunities for transfer. (**Ex. 1**, ¶27).

37. Instead of continuing to work with Ms. Settles and others within Sodexo to find a new position, however, less than one week later, on August 13, 2015, Ms. Fullwood tendered her resignation. (**Ex. 4**, pp. 176-77; **Ex. 6**).

### COMPLAINTS MADE *BY* FULLWOOD

38. On June 15, 2015, while on investigatory leave for the complaints made by University employees against her, Ms. Fullwood called the Sodexo Human Resources Support Center and made a complaint against Sodexo managers Christopher Baugh, Kevin Smith, and Michael Walker. (**Ex. 1**, ¶29; **Ex. 14**, p. 29).

39. During her deposition, Ms. Fullwood admitted that she had not previously made a complaint of discrimination or harassment prior to this date:

8

> A:   . . . I'm trying to understand what you're saying by, is it the first time I ever mentioned any type of harassment was it in June?
> Q:   The first time you filed a complaint.
> A:   Okay. That was June.

(**Ex. 4**, p. 155).

40.   Upon receiving Ms. Fullwood's complaints against Mr. Baugh, Mr. Smith, and Mr. Walker, Mr. Chittenden promptly launched an investigation. (**Ex. 1**, ¶31; **Ex. 14**).

41.   Given the nature of the specific allegations as to Mr. Baugh, as with Ms. Fullwood, Mr. Baugh was placed on paid investigatory leave pending the outcome of the internal investigation. (**Ex. 1**, ¶32; **Exhibit 19**, Employee Investigatory Leave Notice).

42.   Mr. Chittenden's investigation was extremely thorough and included multiple interviews with Ms. Fullwood, Mr. Baugh, Mr. Smith, Mr. Walker, and fourteen other Sodexo managers. (**Ex. 14**, pp. 33-64). These interviews took place between June 22, 2015 and July 30, 2015. (**Ex. 14**, pp. 31-32).

43.   The investigation concluded that Mr. Baugh had used inappropriate and unprofessional language, including the words "street" and "ghetto" when counseling Ms. Fullwood and referring to her behavior. (**Ex. 14**, p. 14). There was no evidence, however, that Mr. Baugh's comments were racially motivated. (**Ex. 14**, p. 14).

44.   During the investigation, Mr. Baugh explained that after he had received complaints from University employees regarding Ms. Fullwood's behavior, he approached Ms. Fullwood to counsel her regarding these complaints and explained to her that her conduct was "street" and "ghetto". (**Ex. 14**, pp. 17-18). Mr. Baugh, who is also African American, explained that his use of these terms was unrelated to Ms. Fullwood's race and, instead, had to do with her level of professionalism. (**Ex. 14**, pp. 17-18).

45.   There was also no evidence to substantiate Ms. Fullwood's allegations that Mr. Baugh used the terms "too black" or "untrainable" to describe Ms. Fullwood. (**Ex. 14**, pp. 14-18).

46. Mr. Baugh did admit to having a habit of touching employees and co-workers, including touching employees and co-workers on the arm during conversations and when providing recognition, and putting his arms around employees and co-workers when providing recognition. (**Ex. 14**, pp. 15-16). There was no evidence, however, that Mr. Baugh physically threatened or sexually harassed Ms. Fullwood or any other employee. (**Ex. 14**, pp. 14-18).

47. The investigation concluded Mr. Smith used the terminology "ghetto" and "street" when coaching Ms. Fullwood and referring to her performance and behavior, but, as with Mr. Baugh, his use of the terms was not racially motivated. (**Ex. 14**, p. 19). Mr. Smith, who is also African American, explained that his use of these terms was unrelated to Ms. Fullwood's race and, instead, had to do with her attitude and approach with her direct reports and co-workers. (**Ex. 14**, pp. 19-20).

48. There was also no evidence to substantiate Ms. Fullwood's allegation that Mr. Smith used the terms "too black" or "untrainable" to describe Ms. Fullwood. (**Ex. 14**, pp. 19-20).

49. The investigation concluded Mr. Walker, in speaking with other Sodexo employees (not Ms. Fullwood), used the terminology "ghetto" and "street" when describing Ms. Fullwood's behavior with University employees. (**Ex. 14**, p. 21). Despite Ms. Fullwood's allegations, the investigation did not show that Mr. Walker ever referenced Ms. Fullwood's race in conversations with his managers, or that he ever used the terminology "too black" or "untrainable" when referring to Ms. Fullwood. (**Ex. 14**, pp. 20-21).

50. Mr. Baugh, Mr. Walker, and Mr. Smith were each disciplined (as well as another Sodexo employee who, as a result of the investigation, was found to have used inappropriate and unprofessional language). (A copy of Mr. Baugh's, Mr. Walker's and Mr. Smith's counseling notices are attached as **Exhibit 20**.) As with Ms. Fullwood, when assessing the appropriate level of discipline for each of these individuals, Mr. Chittenden reviewed the investigatory findings as to that

individual and considered the individual's length of service with the Company and his/her prior disciplinary record. (**Ex. 1**, ¶¶40, 44, 47; **Ex. 14**, pp. 24-26).

51. Mr. Baugh, like Ms. Fullwood, was issued a final written warning and required to complete additional training. (**Ex. 20**). Mr. Smith and Mr. Walker were each issued a written warning and also required to complete additional training. (**Ex. 20**). All such training has been completed. (A copy of the training transcripts of Mr. Baugh, Mr. Smith and Mr. Walker is attached as **Exhibit 21**.)

52. At the conclusion of the investigation, Mr. Chittenden reviewed his investigatory findings (and the discipline issued) with the University's Office of EDI. (**Ex. 14**, p. 30). The University did not request that Mr. Baugh, Mr. Walker, or Mr. Smith be removed from Sodexo's custodial management services account with the University. (**Ex. 1**, ¶48)

### PLAINTIFF'S ALLEGATIONS

53. On August 20, 2015 – only days after resigning her employment with Sodexo – Ms. Fullwood filed an EEOC charge alleging she had been discriminated and retaliated against based on her race, color and gender.

54. Thereafter, Ms. Fullwood filed this lawsuit, alleging she had been sexually and physically harassed by Mr. Baugh; discriminated against on the basis of her race and gender by Mr. Baugh and Mr. Walker; and retaliated against for making sexual harassment and race discrimination complaints "all throughout her employment." (**Ex. 3**). Ms. Fullwood further alleged the harassment and discrimination were sufficient to constructively discharge her from her employment. (**Ex. 3**). (A copy of Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories is attached as **Exhibit 22**).

55. Ms. Fullwood's Complaint alleges that she complained of racial discrimination and sexual harassment to Defendants "all throughout her employment". (**Ex. 3**). Ms. Fullwood flatly

admitted at her deposition, however, that despite being aware of the reporting mechanisms established under Sodexo policy, she never made a complaint to anyone in management or Human Resources prior to being placed on investigatory leave:

> Q: What was your understanding with respect to reporting harassment?
> A: If you were being harassed, to report it to your manager or their manager.
> Q: Was there also an option for reporting it to human resources that you're aware of?
> A: Yes, sir.
> Q: ….[W]as that policy information you reviewed before, during and after your employment?
> A: Yes, sir.
>
> ****
>
> A: . . . I'm trying to understand what you're saying by, is it the first time I ever mentioned any type of harassment was it in June?
> Q: The first time you filed a complaint.
> A: Okay. That was June.

(**Ex. 4**, pp. 87, 99, 198-99, 204-05).

56. Ms. Fullwood also acknowledged that Mr. Chittenden contacted her after she filed her June 2015 complaint with the Human Resources Department, and that Mr. Chittenden investigated those allegations. (**Ex. 4**, pp. 151-57).

57. As noted above, after the investigation of Ms. Fullwood's complaint, Mr. Baugh was placed on final warning and received additional training. (**Ex. 20**). Mr. Walker and Mr. Smith were also disciplined and required to receive training. (**Ex. 20**).

58. Plaintiff further admitted at the deposition that she never attempted to apply for a new position at Sodexo, despite being given the time and opportunity to do so. (**Ex. 4**, pp. 183-84).

## PROCEDURAL BACKGROUND

59. Defendants timely answered Plaintiff's Complaint and the parties have engaged in factual discovery, including the exchange of written interrogatories and document demands. (A copy of the Defendants' Answer is annexed hereto as **Exhibit 23**.)

60. Discovery is now complete, and no issues of material fact remain for resolution between the parties. Pursuant to the terms of the most recently-amended Scheduling Order available, dispositive motions in the instant action are due on or before September 28, 2017.

Dated: September 27, 2017
       Pittsford, New York                                     **HARRIS BEACH PLLC**

                                                         By:    s/Daniel J. Moore
                                                                 Daniel J. Moore
                                                                 *Attorneys for Defendants*
                                                                 99 Garnsey Road
                                                                Pittsford, New York  14534
                                                                Telephone:  (585) 419-8800
                                                                Fax:  (585) 419-8817
                                                                Email:  dmoore@harrisbeach.com

TO:    John C. Luke Jr.
         TAND & ASSOCIATES P.C.
         *Attorneys for Plaintiff*
         990 Stewart Avenue; Suite 225
         Garden City, New York 11553
         Telephone: (516) 393-9151
         Fax: (516) 506-7502
         Email: jluke@jtandlaw.com