UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSTANCE FULLWOOD,

                                    Plaintiff,                    Case # 16-CV-6527-FPG

                                                                 DECISION AND ORDER
v.

SODEXO, INC. & SDH SERVICES WEST, LLC,

                                    Defendants.
_____

## INTRODUCTION

Plaintiff Constance Fullwood commenced this action alleging discrimination, harassment, and retaliation against her former employer Sodexo and its subsidiary SDH Services, West, LLC in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and 42 U.S.C. § 1981. ECF No. 1.

Currently pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 44. After considering the moving papers, the record evidence, and the applicable law, the Court grants Defendants' motion and dismisses Plaintiff's Complaint in its entirety.

## FACTUAL BACKGROUND

The following facts are drawn from the Local Rule 56 Statements of Material Facts and evidence the parties cited, and are read in light most favorable to Plaintiff.

If a statement of fact is unsupported by record evidence or is premised entirely upon inadmissible evidence it must be disregarded. If a proffered fact that is supported by admissible evidence is disputed only with inadmissible or irrelevant evidence, the Court will treat that fact as

undisputed. *See generally, Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that . . . the district court in awarding summary judgment[ ] may rely only on admissible evidence.").

## I.     The Parties

SDH Services West, LLC is a wholly-owned subsidiary of Sodexo, Inc. Sodexo offers outsourcing solutions including food services and custodial management services to corporations, health care and long-term care facilities, retirement centers, schools, colleges, and universities. Sodexo provides custodial management services for the University at Buffalo pursuant to a contract executed in August of 2006.

Plaintiff is an African American female and a former employee of Sodexo. Plaintiff worked as a Custodial Manager at Sodexo's University at Buffalo custodial management services account for approximately six months, from February 2, 2015 to August 14, 2015.

Sodexo currently employs Brett Chittenden as Director II of Employee Relations Services. During the time period relevant to this lawsuit, Chittenden was the Director of Human Resources.

Plaintiff was employed as a Custodial Manager at Sodexo's custodial management services account with the University. In this capacity, she was responsible for supervising a team of the University's custodial service employees.

Plaintiff reported to Christopher Baugh. Sodexo employs Baugh as an Operations Manager assigned to Sodexo's custodial management services account with the University. Baugh reports to Michael Walker, who Sodexo employs as the General Manager of the custodial management services account.

## II.     Sodexo Policies

Sodexo maintains an Employee Handbook and a Company Policy Manual that apply

uniformly to all employees. The Employee Handbook contains Sodexo policies on equal employment opportunity and non-harassment. The Equal Employment Opportunity and Policy Against Harassment provides that Sodexo is committed to providing and maintaining a workplace without discrimination or harassment. Any employee who engages in harassment or discrimination will be subject to discipline, up to and including termination of employment. The policy also sets forth a reporting structure for employees wishing to report harassment or discrimination: employees are instructed to report it to their manager, their manager's manager, the next higher level of management, or a Sodexo Human Resources representative. Plaintiff was provided the name for each level of management who could be contacted in the event of a reporting situation and with Human Resources contact information. The Employee Handbook further provides employees with the option to report via its Business Abuse Hotline.

Consistent with Sodexo's Employee Handbook, the Company Policy Manual includes policies on non-harassment and establishes the same reporting structure found in the Employee Handbook.

Sodexo's policies and the reporting procedure are reviewed with employees during their orientation, and are reinforced by training sessions that are periodically given to supervisory personnel on harassment awareness and prevention.

Plaintiff had access to the Employee Handbook and the Company Policy Manual during her tenure at Sodexo. In addition to reviewing the Employee Handbook with Sodexo General Manager Walker as part of her orientation, Plaintiff had access to Sodexo's Intranet, "SodexoNet." Among other employee tools and information, SodexoNet provides managerial employees access to the Employee Handbook and Company Policy Manual.

Plaintiff also received reinforcement trainings from the University and Sodexo. Specifically, Plaintiff completed a University-administered online training course on harassment prevention on March 17, 2015, a Sodexo-administered online training course on March 17, 2015, and a Sodexo-administered online training course on harassment prevention on March 24, 2015.

When a complaint of discrimination or harassment is received, a Human Resources Department member is assigned to promptly investigate the complaint. Where an employee of a Sodexo client makes a complaint against a Sodexo employee, or a Sodexo employee has complained about an employee of a Sodexo client, the Human Resources Department may conduct the investigation in conjunction with the appropriate representative of the Sodexo client. It is Sodexo policy to take steps to make sure an employee who claims to have been harassed, discriminated against, or retaliated against does not work with the accused until the matter is resolved. This often involves placing the accused on paid or unpaid leave while the facts are investigated. If an investigation concludes that the policy has been violated, appropriate discipline up to and including termination is imposed.

### III.  Complaints against Plaintiff

Throughout Plaintiff's six-month employment, Sodexo received complaints regarding Plaintiff's performance and that she harassed University employees and otherwise engaged in inappropriate and unprofessional behavior. On June 8, 2015, the University's Office of Equity, Diversity and Inclusion ("EDI Office") contacted Sodexo and reported that one of its custodial service employees complained that Plaintiff made inappropriate, demeaning, racial, derogatory, and threatening comments to the University employees she supervised.

Consistent with Sodexo policy and practice, Plaintiff was placed on paid leave pending the outcome of an internal investigation into the complaints for an initial period of two weeks.

Chittenden led the investigation for Sodexo in partnership with the EDI Office. The investigation included interviews with six University employees and Plaintiff. Sodexo and University representatives were present (by telephone or in person) for each interview.

The University concluded that Plaintiff's comments "violate [the University]'s Discrimination and Harassment policy and could create an unwelcome, unprofessional and hostile work environment for University employees." Def. Ex. 16, at 8. It further concluded that:

> Throughout the course of the investigation, several concerns were raised about Plaintiff's job knowledge, supervisory style, poor time management, and ineffective communication with her staff and other university employees. These factors, coupled with the evidence obtained as a result of the hostile work environment complaint, lead the university to recommend that Plaintiff no longer be assigned to work on any of the University at Buffalo campuses.

*Id.*

Then-Human Resources Director Chittenden participated in the interviews with University employees and reviewed the relevant evidence.

The witness interviews substantiated that Plaintiff engaged in conversations with employees about the KKK and Jesse Jackson (during which she was said to have used the word "nigger"), called employees "gay," "retard," "fat," "QP," and "quarter pounder," referred to employees as "ISIS," made an inappropriate reference to male genitals, threatened to write employees up or terminate employees, used the word "bitch" in an introductory meeting, made references about being from "the hood," shared personal information about weight loss surgery, asked an employee to take a photo of her, requested that employees hug her, and videotaped and audiotaped employees without authorization. Def. Ex. 14 at 5. Plaintiff does not deny that the witnesses made these comments, but she denies the alleged misconduct except for a recording of a conversation with Baugh. Pl. Opp'n Stmt., ¶ 29.

The investigation report concluded that Plaintiff engaged in "a consistent pattern of behavior and conduct that violated Sodexo policy, did not support Sodexo values, did not meet the standards Sodexo expects from managers, and showed poor judgment as a manager." Def. Ex. 14 at 4. It further stated that Plaintiff's behavior "created an unfriendly environment for the employees she supervised and created an environment lacking respect and trust." *Id.*

Based on these misconduct findings, and considering the limited length of service Plaintiff had with Sodexo, Plaintiff was issued a Final Written Warning. Plaintiff also had to review Sodexo policies and complete additional harassment and discrimination trainings.

On July 21, 2015, while Plaintiff was still on investigatory leave, Mary Jo Serafini of the University's Human Resources and Compliance Team contacted Sodexo by e-mail and requested that Plaintiff be removed from Sodexo's custodial management services account with the University. Serafini explained that the University was making this request based on the recommendation contained in the EDI Office's Confidential Investigative Summary. In particular, she noted that:

> [S]everal concerns were raised about Plaintiff's job knowledge, supervisory style, poor time management, and ineffective communication with her staff and other university employees. These factors, coupled with the evidence obtained as a result of the hostile work environment complaint, lead the university to recommend that Plaintiff no longer be assigned to work on any of the University at Buffalo Campuses.

Def. Exs. 16 at 8; 18.[1]

---

[1] Plaintiff denies that the University removed her due to her misconduct, *see* Pl. Opp'n Stmt., ¶ 33, however, the evidence she cites is either inadmissible or does not support her assertion. *See* Pl. Exs. 4 at 19; 6, ¶ 31; 13, ¶ 10. For example, Plaintiff submits a sworn statement from her mother, Virginia Fullwood, stating that Doreen Settles told her that Walker called Plaintiff "too black." Pl. Ex. 13, ¶ 10. This cannot be relied upon to create an issue of fact. *See Finnegan v. Bd. of Educ. of Enlarged City Sch. Dist. of Troy,* 30 F.3d 273, 274 (2d Cir. 1994) ("[D]ouble hearsay would not have been admissible at a trial and hence was insufficient to create a genuine issue to be tried."). Ms. Settles did not provide an affidavit or deposition in this action.

The University retains the right to require Sodexo to remove any supervisory personnel from assignment to the custodial management services account when, in the University's opinion, the individual is unsuitable to continue on the account. Sodexo honored the University's request to remove Plaintiff from the account. Consistent with Company policy and practice, on August 6, 2015, Plaintiff was advised that she would no longer be assigned to her duties at the University, but that Sodexo would continue her salary and benefits for six weeks to allow her to apply for other equivalent positions within Sodexo.

On August 13, 2015, Plaintiff tendered her resignation. Def. Exs. 4 at 176-77; 6. Plaintiff testified that she did not want to apply for another position at Sodexo. Pl. Ex. 5 at 184.

## IV. Plaintiff's Complaints

On June 15, 2015, while on leave for complaints University employees made against her, Plaintiff called the Sodexo Human Resources Support Center and made a complaint against Sodexo managers Baugh, Walker, and Kevin Smith. Def. Exs. 1, ¶ 29; 14 at 29.

During her deposition, Plaintiff admitted that she had not complained of discrimination or harassment before June 15, but she testified that she complained to Settles about inappropriate touching by Baugh on February 27, 2015. Def. Ex. 4 at 155; Pl. Ex. 5 at 197.

Upon receiving Plaintiff's complaints against her managers, Chittenden launched an investigation. Given the nature of the specific allegations, Baugh, like Plaintiff, was placed on paid leave pending the outcome of the internal investigation.

The investigation included multiple interviews with Plaintiff, Baugh, Smith, Walker, and 14 other Sodexo managers between June 22 and July 30, 2015.

The investigation concluded that Baugh used inappropriate and unprofessional language, including the words "street" and "ghetto" when counseling Plaintiff and referring to her behavior.

Def. Ex. 14 at 14. Baugh acknowledged that the term "ghetto" could be offensive to African Americans. Pl. Ex. 3 at 21. Baugh is African American.

During the investigation, Baugh explained that after he received complaints from University employees regarding Plaintiff's behavior, he approached Plaintiff to counsel and explained that her conduct was "street" and "ghetto". Def. Ex. 14 at 17-18. Baugh explained that his use of these terms was to indicate that Plaintiff's behavior was unprofessional, and he thought it would "resonate" with her. *Id.* at 36. In hindsight, he testified, "there should have been a better word, I should have just stuck with unprofessional." *Id.* at 20.

Although Plaintiff alleges that Baugh called her "too black" and "untrainable," the investigation indicated that there was no evidence to support that Baugh used those terms. Def. Ex. 14 at 16. Plaintiff testified, "I just feel like maybe, just like they sent the black managers to tell me I was too black and too ghetto, from my white general manager . . . ." Pl. Ex. 5 at 146.

Baugh admitted to having a habit of touching employees and co-workers, including touching employees and co-workers on the arm and putting his arms around employees and co-workers during conversation and when providing recognition. Def. Ex. 14 at 15-16. The investigation found no evidence that Baugh physically threatened or sexually harassed Plaintiff or any other employee. *Id.* at 14-18.

The investigation also concluded that Smith used the terminology "ghetto" and "street" when coaching Plaintiff and referring to her performance and behavior, but, as with Baugh, his use of the terms was not racially motivated. Def. Ex. 14 at 19. Smith is African American. He explained that his use of those terms was not related to her race, but had to do with her attitude and approach with her direct reports and co-workers. Def. Ex. 14 at 18. There was also no evidence to

substantiate Plaintiff's allegation that Smith used the terms "too black" or "untrainable" to describe Plaintiff. *Id.* at 19.

The investigation concluded that Walker, in speaking with other Sodexo employees (not Plaintiff), used the terminology "ghetto" and "street" when describing Plaintiff's behavior with University employees. Def. Ex. 14, at 21. There was no evidence that Walker referenced Plaintiff's race in conversations with his managers or that he used the terminology "too black" or "untrainable" when referring to Plaintiff. *Id.* at 20-21. Walker is Caucasian.

Baugh, Smith, and Walker were each disciplined for using inappropriate and unprofessional language. Def. Ex. 20. Defendants assert that Chittenden reviewed the investigatory findings as to that individual and considered the individual's length of service with the company and his/her prior disciplinary record. Def. Exs. 1, ¶¶ 40, 44, 47; 14 at 24-26.

Baugh, like Plaintiff, was issued a final written warning and had to complete additional training. Smith and Walker were each issued a written warning and also had to complete additional training, which has since been completed.

At the conclusion of the investigation, Mr. Chittenden reviewed his investigatory findings (and the discipline issued) with the University's EDI Office. The University did not request that Baugh, Smith, or Walker be removed from Sodexo's custodial management services account with the University.

## V.     Plaintiff's Allegations

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC") on June 25, 2015. A facsimile copy of the Charge was sent to Chittenden on July 1, 2015.

On January 1, 2016, Plaintiff commenced this lawsuit, alleging that Baugh sexually and

physically harassed her; that Baugh and Walker discriminated against her based on her race and gender; and retaliation for making sexual harassment and race discrimination complaints "all throughout her employment." ECF No. 1. Plaintiff further alleged that the harassment and discrimination were sufficient to constructively discharge her from her employment. *Id.*

Plaintiff testified at her deposition that despite being aware of the reporting mechanisms established under Sodexo policy, she never made a complaint to anyone in management or Human before being placed on investigatory leave. Def. Ex. 4 at 87, 99, 198-99, 204-05. Plaintiff also acknowledged that Chittenden contacted her after she filed her June 2015 complaint with the Human Resources Department, and that Chittenden investigated those allegations. As a result of that investigation, Baugh was placed on final warning and received additional training. Smith and Walker were also disciplined and had to receive training.

Finally, Plaintiff testified that she never attempted to apply for a new position at Sodexo after being given the opportunity to post for a position.

## DISCUSSION

### I.     Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *see Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Regarding materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. More importantly, "summary judgment will not lie if the dispute about a material fact

is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.

As the Second Circuit observed in *Duse v. Int'l Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001), "in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." 252 F.3d 151, 158 (citing *e.g., Anderson*, 477 U.S. at 255). However, "if the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and do not suffice to defeat a motion for summary judgment." *Duse*, 252 F.3d at 158 (citing *e.g.*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir. 1992), *cert. denied,* 508 U.S. 909 (1993); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986) (the existence of a factual issue will not suffice to defeat a motion for summary judgment where that issue is not material to the ground of the motion), *cert. denied,* 480 U.S. 932 (1987)).

Defendants move for summary judgment on Plaintiff's retaliation and hostile work environment claims on the basis that they fail as a matter of law, and seek dismissal of the pendant state law claims. Def. Mem. 6-27. For the reasons that follow, Defendants are entitled to their requested relief.

## II.     Retaliation

Title VII retaliation claims are analyzed under the burden-shifting framework set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> Under this framework, the plaintiff bears the initial burden to
> establish a prima facie case of retaliation by offering evidence that
> she "participated in a protected activity," "suffered an adverse
> employment action," and "that there was a causal connection
> between her engaging in the protected activity and the adverse
> employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d
> 93, 110 (2d Cir. 2010). This showing creates a "presumption of
> retaliation," which the defendant may rebut by "articulating a
> legitimate, non-retaliatory reason for the adverse employment
> action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d
> Cir. 2005). If the defendant provides such an explanation, "the
> presumption of retaliation dissipates," *id.*, and the plaintiff must
> prove "that the desire to retaliate was the but-for cause of the
> challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v.
> Nassar*, [570 U.S. 338, 352 (2013)].

*Ya-Chen Chen v. C.U.N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (alteration added).[2]

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show that:

"(1) she was engaged in a protected activity; (2) Defendant was aware of this activity; (3)

Defendant took adverse action against her; and (4) there was a causal connection between the

protected activity and the adverse action." *Valleriani v. Route 390 Nissan LLC*, 41 F. Supp. 3d

307, 318 (W.D.N.Y. 2014) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 177 (2d Cir.

2006)).

---

[2] Plaintiff argues that retaliation was a "substantial or motivating factor" in her termination. Pl. Mem. at 10-11.
Although the Second Circuit has yet to decide whether the "but-for" causation standard that applies to Title VII
retaliation claims also applies to NYSHRL retaliation claims, the Court applies the "but-for" standard to Plaintiff's
Section 1981 and NYSHRL retaliation claims on the present motion. *See Alvarado v. Norstrom, Inc.*, 685 F. App'x 4,
7-8 (2d Cir. 2017) (noting that Section 1981 and NYSHRL claims are analyzed according to same principles as Title
VII claims and affirming the dismissal of the Section 1981 and NYSHRL claims because the record lacked sufficient
evidence to support plaintiff's argument under the but-for standard); *Varno v. Canfield*, 664 F. App'x 63, 66 (2d Cir.
2016) (applying but-for standard). Plaintiff's claims fail under either standard. *See Nassar*, 570 U.S. at 360 (stating
that the "motivating factor" standard for Title VII gender discrimination claims is a "lessened causation test" when
compared with the "but-for" causation standard).

## A. Protected Activity, Knowledge, Adverse Employment Action

Defendants concede for purposes of this motion that Plaintiff participated in a protected activity by contacting Sodexo's Human Resources Support Center on June 15, 2015, to complain about Baugh, Smith, and Walker. Def. Mem. at 20. Plaintiff also contends that she complained to Sodexo's Senior Recruiter Doreen Settles on February 27, 2015 that Baugh harassed her. Pl. Mem. at 16; Pl Dep at 197. Plaintiff also alleges two adverse employment actions:[3] leave with pay and constructive discharge.[4] Pl. Mem. at 18.

Even if the Court assumes that Plaintiff met her burden as to the first three elements of her *prima facie* case, she nonetheless fails to raise a triable issue of fact as to whether the adverse employment actions were causally related to her harassment complaints. Accordingly, her Title VII retaliation claim fails.

## B. Causation

Plaintiff urges the Court to find the temporal proximity between the protected activity and the adverse actions sufficient to establish a causal connection. Pl. Mem. at 20. The Court disagrees.

> A plaintiff can show a sufficient causal connection between the protected activity and the adverse employment action either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant.

---

[3] For purposes of a Title VII retaliation claim, an adverse employment action is one that is "materially adverse to a reasonable employee or job applicant," and actions are "materially adverse if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quotations omitted).

[4] Plaintiff frames her alleged constructive discharge as a retaliatory employment action. Because the Court assumes that she has met her burden of establishing adverse employment actions, her constructive discharge claim is more appropriately addressed in the context of her assertion of a hostile work environment. *See, e.g., Roelcke v. Zip Aviation, LCC*, No. 15 CIV. 6284, 2018 WL 1792374, at *6 (S.D.N.Y. Mar. 26, 2018) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 142 (2004)).

*Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 528 (S.D.N.Y. 2007), *aff'd sub nom. Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757 (2d Cir. 2008) (quotations omitted).

Here, Plaintiff complained to Settles that Baugh inappropriately touched her on February 27, 2015. On June 8, 2015, the University's EDI Office reported that one of its custodial service employees made a complaint against Plaintiff, who was then placed on paid investigatory leave commencing June 11, 2015. On June 15, 2015, Plaintiff lodged a complaint with Sodexo's Human Resources Support Center alleging race discrimination and sexual harassment. Thus, the only applicable time period that would arguably support an inference of a causal connection would be between February, 27, 2015, when she complained to Settles, and June 11, 2015, when her paid investigatory leave went into effect.[5]

To establish a causal connection based on temporal proximity, the adverse action must be "very close" in time to the protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). The Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013). On the record before the Court, the four-month time period between her complaint to Settles and her paid investigatory leave, without more, is insufficient to defeat Defendants' motion. *See Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x

---

[5] Plaintiff's formal complaint to Chittenden in Human Resources was filed four days after she was placed on leave, and therefore will not be considered for the temporal proximity analysis. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (where adverse employment action due to deficient performance commenced six months before plaintiff filed an EEOC complaint, there could be no causal connection between plaintiff's complaint and his firing); *Hartley v. Rubio*, 785 F. Supp.2 d 165, 182 (S.D.N.Y. 2011) (inference of causation created by temporal proximity is negated when uncontroverted facts demonstrate that adverse actions began before protected activity occurred); *Joseph v. Marco Polo Network, Inc.*, No. 09-cv-1597, 2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010) (granting summary judgment to defendant where plaintiff's breach of company procedures and protected conduct predated adverse action).

107, 110-11 (2d Cir. 2011) (summary order) (temporal proximity of four months was insufficient to establish retaliation in the absence of direct evidence of a causal connection); *Cobian v. N.Y.C.*, No. 99-CV-10533, 2000 WL 1782744, at *18 (S.D.N.Y. Dec. 6, 2000) (temporal proximity of four months insufficient to show causal connection); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . uniformly hold that the temporal proximity must be 'very close.'") (internal citations omitted) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

There is no other evidence linking Plaintiff's paid leave or removal from the University's account to any of her protected activity.[6] Although she argues that Baugh, Smith, and Walker were disciplined in a disparate fashion (they were permitted to continue working for Sodexo on the University account), *see* Pl. Mem. at 20, she does not proffer evidence that she was "similarly situated in all material respects to individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). "[T]he issue of whether fellow employees are similarly situated is somewhat strict." *Desir v. Bd. of Coop. Educ. Servs. (BOCES) Nassau Cty.*, 803 F. Supp. 2d 168, 180 (E.D.N.Y. 2011) "Conclusory statements that similarly situated employees outside the protected class were treated more favorably are not sufficient to defeat summary judgment." *Rosinski v. Am. Axle & Mfg., Inc.*, 663 F. Supp. 2d 197, 204 (W.D.N.Y. 2009), *aff'd*, 402 F. App'x 535 (2d Cir. 2010) (citation and quotation marks omitted).

The investigative report shows that many of Plaintiff's complaints about Baugh, Smith, and Walker were unsubstantiated, and those that were substantiated (use of the terms "ghetto" and "street") were found not to have been racially motivated. The investigation culminated in paid

---

[6] The Court notes that any nexus is further undermined by the undisputed fact that the University, not Sodexo, requested Plaintiff's removal from their account.

investigatory leave and a final written warning with training for Baugh; and a written warning with training for Smith and Walker.

In contrast, it multiple witnesses confirmed that Plaintiff, among other things: (1) engaged in conversations about the KKK; (2) used the word "nigger" in conversation, (3) called employees "gay," "retard," and "fat," (4) threatened to write up or terminate employees, and (5) videotaped and audiotaped other employees without authorization. She received paid investigatory leave and a final written warning.[7] The misconduct was therefore not comparable. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012) ("A proposed comparator is not similarly situated in all material respects unless [he] engaged in all of the same misconduct as plaintiff, or at least committed the most serious of the infractions for which the plaintiff was subjected to an adverse employment action." (internal quotation marks omitted)).

Moreover, Sodexo employed Baugh and Walker, both supervisors, for 35 and 24 years, respectively, whereas it employed Plaintiff for only six months. *See Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 535 (S.D.N.Y. 2002) (finding that the treatment of individuals, "neither of whom began working . . . at the same time as Plaintiff or had exactly the same positions or responsibilities as Plaintiff," could not be compared to that of the plaintiff), *aff'd*, 76 F. App'x 366 (2d Cir. 2003).

Thus, the severity of the offending conduct and the work history of the sanctioned employees do not show disparate treatment such to give rise to a finding of a causal connection.

Without evidence to support an inference that there was a connection between Plaintiff's protected activity and any allegedly disadvantageous employment action, Plaintiff fails to raise an

---

[7] Plaintiff does not dispute that, in the interim, the University's EDI portion of the joint investigation resulted in a recommendation that Plaintiff be removed from working at the University campuses due to a "pattern of comments... that could create an unwelcome, unprofessional, and hostile work environment for University employees." Def. Ex. 16. In response, Sodexo continued her salary and benefits for six weeks to allow her to apply for other equivalent positions within the company.

issue of fact as to causation. Even if Plaintiff could meet her burden at the *prima facie* stage, Defendants have articulated a legitimate, nondiscriminatory reason for the actions taken against her.

### C. Legitimate, Nondiscriminatory Reason, Pretext

Plaintiff's unprofessional behavior and misconduct are legitimate, nondiscriminatory reasons for her placement on a final warning and investigatory leave. *See Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014) (finding that the defendant had "sufficiently articulated a legitimate, nondiscriminatory explanation for [the plaintiff's] termination" because the "evidence was undisputed that [the plaintiff] repeatedly engaged in serious misconduct," including "insubordination" and "use of profane language"). The burden thus returns to Plaintiff to establish that these reasons were pretextual by showing that the explanations Defendants offered were false and that retaliation was the "but for" cause of Defendants' actions. *Vosburgh v. Amer. Nat. Red Cross*, 08-CV-0653, 2014 WL 4826688, at *9 (N.D.N.Y. Sept. 29, 2014) ("An employer's reason for an adverse action cannot be proven to be a pretext for retaliation unless it is shown to be false and that retaliation was the real reason.") (alterations omitted); *see also Nassar*, 570 U.S. at 352 (requiring the plaintiff to demonstrate that action would not have been taken but for retaliatory animus). The Second Circuit has held that temporal proximity alone is insufficient to demonstrate pretext. *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 847 (2d Cir. 2013).

Plaintiff argues in conclusory fashion that "it is clear in the present case the Plaintiff's opposition was the only cause of Defendants' retaliation . . . ." Pl. Mem. at 15. In support of this position, she asserts that "it is undisputed that all of the discriminatory comments were made by Defendants' supervisors," that she protested being called "ghetto," and that she informally reported

Baugh's sexual harassment in February of 2015 to Settles. Her argument overlooks several critical, undisputed facts.

First, the investigation into Plaintiff's conduct was prompted by a subordinate cleaner, Ms. Brittany Mazierski. The extensive report detailing Plaintiff's misconduct was the result of a joint investigation between Sodexo Human Resources and the University's EDI Office, which included interviews with six witnesses. A review of the report indicates that none of the six interviewees were the same individuals alleged to have discriminated or retaliated against Plaintiff. Those witnesses substantiated most, if not all, of the complaints against Plaintiff.

Second, Mazierski's complaint was lodged on June 8, 2015. Chittenden placed Plaintiff on routine investigatory leave on June 10, 2015, after which the investigation was conducted from June 22 to July 23, 2015. Plaintiff thereafter made a formal complaint to Sodexo's Human Resources on June 15, 2015, and an EEOC complaint on June 25, 2015 regarding Baugh, Smith, and Walker. Thus, two of the three instances of the protected activity she urges the Court to consider occurred *after* Mazierski's complaint was filed.

Finally, Plaintiff offers no evidence to suggest that the actions taken against her were due to her protected activity. Even if the Court assumed that her informal complaint to Settles and her uncorroborated protests of discrimination to Baugh, Smith, and Walker, constituted protected activity for purposes of this motion (and that Defendants were aware of that activity), there is simply no nexus between her alleged protected activity and Mazierski's complaint which ultimately resulted in Plaintiff's investigatory leave. Thus, eliminating Plaintiff's supervisors (Baugh, Smith, Walker), the three people most likely to have retaliated for Plaintiff's complaints against them, takes the Court even further from identifying any evidence of a decision maker who harbored retaliatory intent.

Plaintiff not rebutted Defendants' proffered explanations for her investigatory leave with any evidence that would support a finding of retaliation. Aside from temporal proximity, Plaintiff presents no evidence that her protected activity caused the investigatory leave. *See, e.g., Kwan*, 737 F.3d at 847 ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."). For these reasons, Plaintiff's claims fail as a matter of law and Defendants are entitled to summary judgment on the retaliation claim.

## III.  Hostile Work Environment

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Plaintiff's racial discrimination claim is premised upon a hostile work environment theory. Pl. Mem. at 11-14.

To prevail on such a theory, Plaintiff must show: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *Summa*, 708 F.3d at 124.[8]

"[A] plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the

---

[8] "The standard for showing a hostile work environment under Title VII . . . and the [NYSHRL] is essentially the same." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011).

work environment to be abusive." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015). A plaintiff must also produce evidence that the hostility occurred because of her protected characteristic. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

In determining whether an environment is "hostile" or "abusive," courts may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance . . . [but] no single factor is required." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (internal quotation marks and citation omitted). "Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was extraordinarily severe." *Id.* at 153.

## A.     Severe and Pervasive

"For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity. . . meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments[.]" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotations, citation, and alteration omitted). This inquiry depends on the quantity, frequency, and severity of those slurs, considered cumulatively. *Id.*

Assuming that the subjective element of the hostile work environment claim has been satisfied, *see Goldschmidt v. N.Y.S. Aff. Housing Corp.*, 380 F. Supp. 2d 303, 312 (S.D.N.Y. 2005) (court assumes "at the outset . . . that the subjective element of the hostile work environment claim has been satisfied, that is, plaintiff perceived his work environment to be hostile and abusive"), Plaintiff must demonstrate that the conduct was so severe or pervasive as to alter her employment conditions.

Plaintiff asserts that use of the terms of "ghetto" and "street" are innately racially-charged and thus sufficient to support her claim of a racially hostile work environment. Pl. Mem. at 11-13. Contrary to Plaintiff's contention, use of these terms does not automatically confer a hostile environment, and the case law Plaintiff cites does not support such a contention.

In *Richmond v. Gen. Nutrition Centers Inc.*, No. 08 CIV. 3577, 2011 WL 2493527, at *16 (S.D.N.Y. June 22, 2011), the Southern District found that the plaintiffs proffered evidence upon which a reasonable fact-finder could conclude that they were subject to a hostile work environment where the alleged harassers made frequent, highly offensive remarks over a long period of time in connection with allegations of adverse employment actions. *Id.* Here, the remarks made by three supervisors, two of whom are also African American, do not rise to the same level of severity to establish that Plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of" her employment. *Littlejohn*, 795 F.3d at 321.

Further, *Kauffman v. Maxim Healthcare Servs., Inc.*, No. 04-CV-2869, 2006 WL 1983196 (E.D.N.Y. July 13, 2006), and *Daniel v. ABM Indus., Inc*., No. 16-CV-1300, 2017 WL 1216594 (S.D.N.Y. Mar. 31, 2017), do not address hostile work environment claims or stand for the proposition that the term "ghetto," standing alone, gives rise to an inference of discrimination. *Cf. Daniel*, 2017 WL 1216594, at *10 (On a 12(b)(6) motion, the plaintiff met the "minimal burden of alleging facts suggesting an inference of discriminatory motivation," where he alleged use of terms "ghetto" and "dirty street thugs" who "walk around with headphone[s] in their ears and pants down their waist," and a supervisor "cited that language in warning Plaintiff about the safety of his own job.").

The Court is mindful that "facially non-discriminatory terms" like "welfare queen, terrorist, thug, [and] illegal alien" "can invoke racist concepts." *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *9 (S.D.N.Y. Dec. 17, 2013). As *Lloyd* also observes, however, "courts decline to recognize allegations of code words when the words used activate no racial implications or animus." 2013 WL 6667531, at *9. There is insufficient evidence on this record to show that these comments were imbued with racism. Plaintiff's supervisors explained that, although inappropriate, the terms were used in the context of Plaintiff's professionalism and behavior and not her race. Def. Ex. 14. Significantly, Plaintiff herself was subject to complaints by her subordinates alleging inappropriate, demeaning, racial, and derogatory comments. *Id.*

A plaintiff's "[feelings and perceptions] of being discriminated against [are] not evidence of discrimination," and Plaintiff has otherwise failed to come forth with evidence to support her argument that these statements were racially charged. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir.1999) (internal quotation marks and citation omitted).[9] Her discrimination claim is further weakened by the fact that two of the three alleged harassers are members of the same protected class. *Waters v. Gen. Bd. of Glob. Ministries*, 769 F. Supp. 2d 545, 554 (S.D.N.Y. 2011) ("As many courts have recognized, where the plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes harassment or discrimination is weakened.") (collecting cases).

The Court concludes that Plaintiff has offered insufficient evidence to raise a material issue of fact as to whether Plaintiff was subjected to a hostile work environment based on her race. A

---

[9] Plaintiff also notes that "the discriminator sharing the same race is not a shield against liability." Pl. Mem. at 13, n.5 (citing *Johnson v. Strive E. Harlem Empl. Grp.*, 990 F. Supp. 2d 435 (S.D.N.Y. 2014)). In *Johnson*, a jury found an African American female's supervisor (a Puerto Rican male) liable for intentional discrimination where he admitted to repeatedly describing the plaintiff as a "nigger" and commenting that "black women get in the way of themselves." 990 F. Supp. 2d at 446. *Johnson* is therefore distinguishable from the present case.

reasonable jury could not find that the remarks about Plaintiff were "sufficiently continuous and concerted to have altered the conditions of her working environment." *Littlejohn*, 795 F.3d at 321.

Plaintiff also claims that sexual harassment caused a hostile work environment. Pl. Mem. at 20. The Court has reviewed the parties' arguments and finds that, similar to her race-based claims, Plaintiff has not alleged that Baugh's conduct was sufficiently severe or pervasive to give rise to a hostile work environment. Although she testified that Baugh called her a "bitch all the time," *see* Pl. Ex. 5 at 169, the Second Circuit has held that "[i]solated, minor acts or occasional episodes do not warrant relief." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *see also LaSalle v. City of N.Y.*, No. 13-cv-5109, 2015 WL 1442376, at *1, 7 (S.D.N.Y. Mar. 30, 2015) (granting a motion to dismiss Title VII hostile work environment claim where plaintiff alleged that supervisors "habitual[ly]" called her a "bitch" and used other derogatory and sexist names toward her but did not indicate an approximate number of times or the time period in which the statements occurred).

Likewise, her allegation that Baugh punched her in the arm three times, *see* Pl. Ex. 5 at 214, is not "extraordinarily severe," such to alter the conditions of her working environment. *Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008) (finding that, where supervisor grabbed plaintiff's arm, punched him in the arm, spit at him, and poked him in the eye, "[t]he physical encounter itself, while understandably upsetting, was not so severe as to alter materially the plaintiff's working conditions . . . ."); *cf. Funk v. F & K Supply, Inc.*, 43 F. Supp. 2d 205, 215 (N.D.N.Y. 1999) (evidence supported jury's finding of a gender-motivated hostile work environment included frequent use of vulgarities, numerous sexually offensive physical contacts, threats, and physical abuse).

In any event, there is no genuine issue of fact that the alleged conduct and comments were because of Plaintiff's gender. The record shows that Baugh admitted to touching (putting his arms around employees, gently punching individuals in the arm) male and female co-workers during conversation or when providing recognition. Def. Ex. 14 at 15. One witness who observed Baugh calling Plaintiff a "bitch" told Chittenden that, "they were actually playing . . . they were both calling each other names." *Id.* Baugh did not deny using the term to Plaintiff, *id.* at 16, and Plaintiff testified that Baugh "was just very comfortable with me." Pl. Ex. 5 at 214. This kind of "rude and "boorish behavior, without more, does not create an actionable hostile work environment," *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 517 (S.D.N.Y. 2014), and the evidence falls short of raising an issue of fact as to whether Plaintiff was subjected to the hostility because of her membership in a protected class. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

### B. Constructive Discharge

Finally, to the extent that Plaintiff's Complaint alleges that the supervisory harassment culminated in her constructive discharge, such an argument must fail. *See* Compl., ¶ 30.

A constructive discharge claim consists of "two basic elements." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). First, a plaintiff must prove "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Id.* (citation omitted). Second, "he must also show that he actually resigned." *Id.* (citation omitted). A plaintiff must also show that the employer acted "deliberately" to make working conditions intolerable. *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007). In short, Plaintiff makes no such showing.

Plaintiff does not dispute that: 1) on June 21, 2015, the University requested that Plaintiff be removed from their account due to serious misconduct; 2) Plaintiff's salary and benefits were

continued to allow for her to apply for other equivalent positions within Sodexo; 3) during the same time, Sodexo undertook an investigation into her complaints; 4) Sodexo issued written warnings and required training of all the supervisors involved; and 5) Sodexo placed Baugh on paid leave during the pendency of the investigation. The record lacks evidence that Defendants intended to create intolerable working conditions for Plaintiff and, to the contrary, the above cited evidence points to a finding that Sodexo exhibited an interest in retaining her despite her short employment history and the severity of the complaints lodged against her by her subordinates. *See Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 71, 73-74 (2d Cir. 2000); *see also Mack v. Otis Elevator Co.,* 326 F.3d 116, 128 (2d Cir. 2003) (concluding that the plaintiff failed to provide evidence of deliberate action by her employer because her employer immediately began investigating the plaintiff's allegations of her supervisor's harassment once the plaintiff notified them). The Court therefore concludes that there is no evidence to support an inference that Defendants intended to create intolerable working conditions for Plaintiff.

For these reasons, Plaintiff's claims of a hostile work environment fail as a matter of law. Thus, summary judgment is warranted in Defendants' favor on all of the claims in the Complaint.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 44) is GRANTED, and the Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment and to close this case.

IT IS SO ORDERED.

Dated: July 17, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

25